**EXHIBIT 1**

CIRCUIT COURT FOR BALTIMORE CITY
CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202
Main: 410-333-3733
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

Maryland Insurance Administration

DEC 15 2025

Received

**To:** THE TRAVELERS INDEMNITY COMPANY OF AMERICA
200 ST. PAUL PLACE
SUITE 2700
BALTIMORE, MD 21202

|  |  |
|---|---|
| **Case Number:** | C-24-CV-25-009959 |
| **Other Reference Number(s):** |  |
| **Child Support Enforcement Number:** |  |

**BREWERS HILL REALTY LLC, ET AL. VS. THE TRAVELERS INDEMNITY COMPANY OF AMERICA**

Issue Date: 12/5/2025

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 30 days after service of this summons upon you, in this court, to the attached complaint filed by:

BREWERS HILL REALTY LLC; RCGL D7 BREWERS HILL, LLC
986 Monroe Avenue
Rochester, NY 14620; 8 The Green Street
Dover, DE 19901

This summons is effective for service only if served within 60 days after the date it is issued.

Xavier A. Conaway
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:
1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff m

**CC-CV-032 (Rev. 03/2024)**

MARYLAND INSURANCE ADMINISTRATION
FORWARDED TO THE NAMED INSURANCE COMPANY
DATE 12/16/2025

12/05/2025 8:59 AM

**Circuit Court for Baltimore City**
**Brewers Hill Realty LLC, et al. vs. THE TRAVELERS INDEMNITY COMPANY OF AMERICA** Case Numb

2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**Circuit Court for Baltimore City**

Brewers Hill Realty LLC, et al. vs. THE TRAVELERS INDEMNITY COMPANY OF AMERICACase Numb:

## SHERIFF'S RETURN
### (please print)

To:  THE TRAVELERS INDEMNITY COMPANY OF AMERICA

_____ ID# _____ of the _____
        Serving Sheriff's Name

County Sheriff's office present to the court that I:

(1) Served _____
                                    Name of person served

on _____ at _____
        Date of service                              Location of service

_____ by _____ with the following:
                                              Manner of service

☐ Summons                              ☐ Counter-Complaint
☐ Complaint                            ☐ Domestic Case Information Report
☐ Motions _____             ☐ Financial Statement
☐ Petition and Show Cause Order        ☐ Interrogatories
☐ Other _____
                    Please specify

(2) Was unable to serve because:
    ☐ Moved left no forwarding address    ☐ No such address
    ☐ Address not in jurisdiction          ☐ Other
                                                      _____
                                                       Please specify

Sheriff fee: $ _____   ☐ waived by _____

_____         _____
      Date                        Signature of serving Sheriff

Instructions to Sheriff's Office or Private Process Server:
1. This Summons is effective for service only if served within 60 days after the date issued. If it is not served within 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

## IN THE CIRCUIT COURT OF MARYLAND FOR BALTIMORE CITY

|  |  |
|---|---|
| BREWERS HILL REALTY LLC<br>986 Monroe Avenue<br>Rochester, New York 14620<br><br>and<br><br>RCGL D7 BREWERS HILL, LLC<br>8 The Green Street<br>Dover, Delaware 19901<br><br>    Plaintiffs,<br><br>    v.<br><br>THE TRAVELERS INDEMNITY<br>COMPANY OF AMERICA,<br><br>Serve on:<br>Maryland Insurance Administration<br>200 St. Paul Place, Suite 2700<br>Baltimore, MD  21202<br><br>    Defendant. | Case No.: _C-24-CV-25-009959_ |

### COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiffs, Brewers Hill Realty LLC and RCGL D7 Brewers Hill, LLC (collectively, **"Brewers Hill"**), by and through their undersigned counsel, hereby sue Defendant, The Travelers Indemnity Company of America (**"Travelers"**), for breach of contract, statutory bad faith, and damages.

### Nature of the Action

1.    Brewers Hill files this action against Travelers because Travelers has failed to provide insurance coverage for extensive damage to Brewer Hill's luxury apartment complex,

Axel Brewers Hill, located in an exclusive section of Baltimore City, Maryland ("Apartment Complex") sustained on September 20, 2024.

2.      It has been more than a year since the loss was sustained at the Apartment Complex and Travelers has failed to issue a coverage determination to its policyholder, Brewers Hill, meaning Brewers Hill has not been paid the millions of dollars Travelers owes for the property damage, rental loss, and other covered losses.

## Parties

3.      Brewers Hill Realty LLC is a limited liability company organized and existing under the laws of the State of New York and has its principal place of business in Rochester, New York.

4.      RCGL D7 Brewers Hill, LLC a limited liability company organized and existing under the laws of the State of Delaware and has its office in 8 The Green Street, Dover, Delaware 19901.

5.      Brewers Hill owns the Apartment Complex, and Brewers Hill and RCGL D7 Brewers Hill, LLC are the named insureds under an insurance policy issued by Travelers.

6.      Travelers is incorporated in Connecticut and has its principal place of business in Hartford, Connecticut.  Travelers regularly conducts business in Maryland, writing policies and insuring Maryland properties in return for the payment of premiums.

## Jurisdiction and Venue

7.      This Court has personal jurisdiction over Travelers pursuant to §§ 6-102(a) and 6-103(b) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

8.      Venue is proper under § 6-201(a) of the Courts and Judicial Proceedings Article.

**Facts Common to All Counts**

A. The Travelers Policy

9.      Travelers sold a Commercial Property Insurance Policy number Y-630-8T924370-TIA-23, with a policy period December 29, 2023 to December 29, 2024, with policy limits of $98,616,203, to Brewers Hill (the "Policy"). A copy of the Policy is attached hereto as Exhibit 1 and incorporated herein by reference.

10.     Brewers Hill and RCGL are the Named Insureds under the Policy.

11.     The property located at 1211 South Eaton Street, Baltimore, Maryland 21224 (*i.e.,* the Apartment Complex) is an insured location under the Policy; identified as an "Apartment Building."

12.     The insurance under the Policy "applies on a BLANKET basis."

13.     The Policy states:

> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.

Exhibit 1, Policy at Deluxe Property Cov. Form at A.

14.     "Covered Property" includes the Apartment Complex.

15.     The covered property includes "walks, patios or other paved surfaces." *See* Exhibit 1, Policy at Add'l Covered Property End.

16.     The Policy defines "Covered Cause of Loss" to include "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is excluded or limited by other provisions in the Policy. *See* Exhibit 1, Policy at Deluxe Property Cov. Form at B.

17.     The Policy does not define "RISKS OF DIRECT PHYSICAL LOSS".

18.     The Policy provides "Deluxe Property Coverage", which includes "additional coverages" and "coverage extensions."

3

19.    The additional coverages include:

(a) Debris Removal:

We will pay your expense to remove debris of Covered Property, and other debris that is on the described premises, when such debris is caused or results from a Covered Cause of Loss that occurs during the policy period. [Policy at A.3.a(1)].

(b) Expediting Expenses:

In the event of covered loss or damage to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to make temporary repairs to, or expedite the permanent repairs or replacement of the Covered Property at the premises sustaining loss or damage. [Policy at A.3.b].

(c) Water or Other Substance Loss – Tear Our and Replacement Expense

In the event of covered loss or damage caused by or resulting from water (or steam), other liquid, powder or molten material, we will pay: (1) The necessary cost of tearing out and replacing any part of a Covered Building or Structure to repair damage to the system or appliance from which the water (or steam), other liquid, powder or molten material escapes ... [Policy at A.3.m].

(h) Ordinance or Law Coverage

In the event of covered direct physical loss or damage to a building that is Covered Property, we will provide each of the following coverages that apply to that lost or damaged building, as indicated in the Schedule below:

... Coverage For Loss to the Undamaged Portion of the Building

\*    \*    \*

Demolition Cost Coverage

\*    \*    \*

Increased Cost of Construction Coverage

*See* Exhibit 1, Policy at Ord. or Law Coverage End.

20.    The Policy has a coverage extension for Extra Expense stating:

(1) You may extend the insurance provided by this Coverage Form to apply to the reasonable and necessary Extra Expense you incur, during the period of restoration, due to direct physical loss or damage to property at or within 1,000 feet of the described premises caused by or resulting from a Covered Cause of Loss.

\*   \*   \*

(3) As used in this Extension:

(a) Extra Expense means necessary expenses you incur that you would not have incurred if there had been no direct physical loss or damage to property:

(i) To avoid or minimize the suspension of business and to continue your normal business operations:

- At the described premises; or

- At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations ....

*See* Exhibit 1, Policy at Deluxe Property Cov. Form at A.4.i.

21. "Water damage" is a "Specified Cause of Loss." *See* Exhibit 1, at J.12.

22. "Water damage" is defined as "Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts) that is located on the described premises and contains water or steam ...." *See* Exhibit 1, at J. 17.

B.   Business Income and Extra Expense Coverage

23. The Policy provides Property and Business Income with Extra Expense coverage for the Covered Property (including the Apartment Complex).

24. The Policy provides Business Income coverage, stating:

We will pay for:

- The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

5

- The actual Extra Expense you incur during the "period of restoration";

caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*See* Exhibit 1, Policy at Deluxe Business Income (and Extra Expense) Cov. Form at A.

25.     "Business Income" is "the sum of the: (1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; plus (2) Continuing normal operations expenses incurred, including payroll." *Id.* at A.1.

26.     "Suspension" is defined as "The partial or complete cessation of your business activities" or "That a part or all of the described premises is rendered untenantable, if coverage for Business Income including 'Rental Value' or 'Rental Value' only applies." *Id.* at G.6.

27.     "Operations" is defined as "a. Your business activities occurring at the described premises even if such activities would not have been produced income during the 'period of restoration', such as research and development activities; and b. The tenantability of the described premises, if coverage for Business Income including 'Rental Value' or 'Rental Value' only applies." *Id.* at G.3.

28.     "Period of restoration" is defined as:

the period of time that:

(1)     (a) For Business Income coverage, begins once the number of hours of the applicable Business Income hour deductible, if any, expires following the time of direct physical loss or damage; and

(b) For Extra Expense coverage begins immediately after the time of direct physical loss or damage;

caused by or resulting from a Covered Cause of Loss at the described premises; and

6

(2) Ends on the earlier of:

>> (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar qualify; or

>> (b) The date when business is resumed at a new permanent location.

*See* Exhibit 1, at G.4.

29.    The Deluxe Business Income (and Extra Expense) Coverage Form of the Policy also provides Extra Expense coverage:

> Extra Expense means reasonable and necessary expenses described in a., b., and c. below that you incur during the "period of restoration" and that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss:

> a.    Expenses to avoid or minimize the "suspension" of business and to continue "operations" at:

>> (1) The described premises; or

>> (2) Replacement premises or temporary locations, including:

>>> (a) Relocation expenses; and

>>> (b) Costs to equip and operate the replacement premises or temporary locations;

> b.    Expenses to minimize the "suspension" of business if you cannot continue "operations"; or

> c.    Expenses to repair or replace property, but only to the extent the amount of loss that otherwise would have been payable under this Coverage Form is reduced.

*See* Exhibit 1, at A.2.[1]

---

[1] This Extra Expense provision is separate and apart from the provision in the Deluxe Property Coverage Form referenced in paragraph 20 above.

30.     The Policy has "specific limits" for business income of $14,437,000.  *See* Exhibit 1, Policy at Deluxe Property Cov. Part. Schedule – Specific Limits.

31.     The Policy has Extended Business Income coverage with a coverage period of 365 days.  *See* Exhibit 1, Policy at Dec.

C.     The Loss and Travelers' Bad Faith

32.     The Apartment Complex is a luxury property in the exclusive neighborhood of Brewers Hill in Baltimore City near the Harbor.

33.     The Apartment Complex is located in a highly competitive rental market.

34.     The Apartment Complex is comprised of 372 units with first-class amenities, including a resort-style outdoor pool on the rooftop, virtual sports center, fitness centers, and outdoor courtyards for yoga, movies, and grilling.

35.     Because the pool is above-ground on the rooftop, a reinforced concrete vault was constructed to house it.

36.     Brewers Hill purchased the Apartment Complex in or about January 2022.

37.     On September 20, 2024, the shallow end of the pool rose, and a crack developed towards the shallow end of the pool with water leaking out.

38.     The Fire Department arrived on scene and the pool was eventually drained, however, the property sustained significant damage.

39.     To ensure their safety, some tenants of the Apartment Complex were evacuated.

40.     Brewers Hill timely notified Travelers of the incident.

41.    Structural engineers and other professionals were engaged to assess the structural integrity of the building structure to ensure it was safe for continued occupancy. It was confirmed safe, and the tenants were permitted to return within hours of the event.[2]

42.    Following notice of the pool incident, Brewers Hill engaged Ira L. Straff, President of Insurance Adjustment Bureau, Inc., public adjusters ("IAB"), to provide adjusting services to assist in the presentation of Brewers Hill's insurance claim to Travelers.

43.    Ashanti Barfield of Travelers was assigned to adjust Brewers Hill's property damage claim on Travelers' behalf (assigned claim number F4C1744).

44.    On September 26, 2024, IAB attended a meeting and inspection at the Apartment Complex with Travelers, its engineer Robert Cole, PE of Wiss, Janney, Elstner Associates, Inc. ("WJE"), and its building consultant Eric Campion of J.S. Held.

45.    The September 26, 2024 meeting (referenced above) was the first, and only, inspection that Messrs. Barfield, Campion, and Cole attended.

46.    In a letter dated October 3, 2024, Travelers advised Mr. Straff of IAB that it was "investigating what caused the pool to rise three to four feet above the pool deck and has been unable to determine whether your claim is covered under your policy based on the information available to us at this time."

47.    In the October 3, 2024 letter, Travelers stated: "The purpose of this letter is to let you know that the company reserves its rights under the policy and law, including the right to deny

---

[2] On the same day of the pool event, the tenants filed a class action lawsuit, Case No. 1:24-cv-02722-BAH, in this Court relating to the event and their evacuation of the property (alleged as a constructive eviction). The lawsuit was tendered to Travelers for a defense under the liability part of the Policy. Travelers agreed to defend that action and assigned the law firm of Ferguson, Schetelich & Ballew as defense counsel. That suit was dismissed on September 11, 2025. It is Brewer Hill's own insurance claim that is the subject of this action.

all or part of your claim that is not covered. Our research is ongoing to determine whether coverage is provided by your policy."

48.    In a letter dated October 30, 2024, Mr. Straff of IAB requested that Travelers provide an update on its investigation and the source of its facts relating to Brewers Hill's loss and claim.

49.    In an email dated November 5, 2024, purporting to respond to Mr. Straff's October 30, 2024 letter, Travelers stated: "Once our investigation has been completed we will provide you with a copy of the engineer's report and inform you of our coverage position. We will not provide you with all loss notices, photographs, and statements as you requested as that information is privileged."

50.    Loss notices, photographs, and statements in Travelers' possession are not privileged; such information is acquired during the normal course of an insurance company's claim investigation.

51.    Another site visit was conducted on November 21, 2024 and representatives of WDP & Associates Consulting Engineers, Inc. ("WDP") attended, but Mr. Barfield did not attend.[3]

52.    Another site visit was conducted on November 25, 2024, but no representatives of Travelers' property division attended.

53.    Months passed with no coverage letter from Travelers.

54.    In a letter dated March 27, 2025, Mr. Straff of IAB advised Travelers that, due to its delay in investigating the claim, Brewers Hill "will be making temporary arrangements to rent

---

[3] WDP was retained by FSB, the law firm retained by Travelers (liability division) to defend Brewers Hill in the class action filed by its tenants (referenced in footnote 1 above).

a swimming pool facility for their residents, as well as transportation to and from the facility, etc., as this is one of the amenities that is offered to their residents as part of their lease."

55.    Another site visit was conducted on May 12, 2025 and representatives of WDP attended, but no representatives of Travelers' property division attended

56.    During the week of June 10, 2025, destructive testing and investigation was conducted at the Apartment Complex by WDP over the course of four days, pursuant to a Destructive Testing Evaluation Protocol that was shared with the parties and their representatives.

57.    On information and belief, WDP or Travelers communicated with WJE regarding the testing protocol in advance of the June 2025 testing and investigation.  WJE and Travelers did not ask to conduct any testing or inspection in addition to the testing and inspection proposed by WDP.

58.    WJE and Mr. Barfield were invited to participate in and observe the testing being performed by WDP during the week of June 10, 2025.  Mr. Barfield did not attend.  A representative of WJE attended, but did not ask any questions or conduct any testing or investigation during any of the four days.

59.    Travelers continued to ignore Mr. Straff's repeated requests for information and updates on this claim.

60.    Another site visit was conducted on July 7, 2025 by WDP.

61.    Another site visit was conducted on July 24, 2025 and a representative of WDP attended as the sole representative of Travelers; Mr. Barfield and WJE did not attend.

62.     On August 22, 2025, more than 11 months after the pool event, WDP issued a "draft" report concerning its investigation of the cause of loss (occurring during the week of June 10, 2025).[4]

63.     WDP concluded, in a draft report, that "lack of a drainage media installed at the vault waterproofing level was the primary cause of the buildup of water and the resulting hydrostatic uplift pressure under the pool shell" and the "pool failure was caused by the hydrostatic pressure uplift force acting underside the pool shell."

64.     On August 19, 2025, Mr. Barfield asked for additional destructive testing to assist in Travelers' coverage investigation

65.     In a letter dated August 25, 2025, Mr. Straff of IAB responded and requested an explanation for Travelers' repeated delays:

> you have sufficient information to make a coverage determination. Both you and WJE [your engineers] have had more than enough time, eleven (11) months, to complete the investigation and make a coverage determination, especially when WJE witnessed all of the destructive and non-destructive testing and investigation and had the opportunity to perform all necessary testing when WDP conducted the destructive testing in June.

IAB further noted that the destructive testing was done pursuant to the protocol "shared" with WJE.

66.     On September 15, 2025, Mr. Barfield responded with a bare-bones explanation of why Travelers was asking for additional testing.

67.     Weeks passed with Mr. Barfield failing to provide dates for the additional testing it required, delaying resolution of the claim.

---

[4] Brewers Hill also learned that Travelers' engineer WJE (retained to investigate the property damage claim) was in direct contact with WDP, the engineers retained by defense counsel pursuant to the liability coverage part of the Policy.

68.    On October 2, 2025, Mr. Barfield requested "some dates and times you [Mr. Straff] are available during the week of October 13, 2025, to meet with them [WJE] in order to assess the current state of the pool and determine if any preliminary actions are necessary before conducting additional testing.  Once we have identified the required preliminary actions, we will be able to provide you with the names and certificates of insurance of the contractors who will be performing those actions, along with the scope of work."

69.    In that October 2 letter, Mr. Barfield failed to acknowledge that Mr. Straff had already provided the dates of October 14 and October 15 for inspection and testing.

70.    Despite repeated requests, Travelers did not explain why WJE needed to perform this testing in light of the fact that it was involved in, and participated in, the protocol for the destructive testing done by WDP back in June 2025.

71.    On October 14, 2025, 389 days after the loss, WJE visited the site to "assess the current state of the pool and determine if any preliminary actions are necessary before conducting additional [undisclosed] testing."  WJE has still not conducted additional testing, although it is currently scheduled for December 2025.

72.    Mr. Straff of IAB attended all the referenced site visits, testing, and inspections.

73.    During the course of the investigation of the claim (now exceeding 14 months), IAB repeatedly requested the ".ESX file" of Travelers' estimate and JS Held's ".ESX file" (*i.e.*, files created by Xactimate software) and estimate; Travelers refused to provide the information.

74.    During the course of the investigation of the claim, IAB repeatedly requested Travelers' loss evaluations of the subject damages, and reports and evaluations of Travelers' engineers, experts and consultants; Travelers refused these requests.

13

75.     During the course of the investigation of the claim, IAB repeatedly requested that Travelers complete its investigation "in a more timely fashion" and "resolve the claim"; Travelers refused these requests.

76.     During the course of the investigation of the claim, IAB repeatedly requested that Travelers explain its delay in providing requested estimates and resolving the claim; Travelers refused these requests.

77.     To date, the pool and the entire deck and lounge area surrounding it are in disrepair and unusable, making the Apartment Complex less desirable and marketable.

78.     As a result of Travelers' actions (including its delays and failure to pay the full claim), Brewers Hill cannot fix the pool or address the related damage sustained at the Apartment Complex.

79.     Brewers Hill is required by its mortgage company to maintain the Apartment Complex in "good repair and marketable condition" and its inability to repair the pool and related damages – all due to Travelers' actions – negatively affects its ability to comply with that requirement and exposes Brewers Hill to further damages and liability.

80.     To date, more than 14 months after the loss, Travelers has not issued a written coverage position on the loss and Brewers Hill's claim.

81.     Brewers Hill's damages exceed $4.4 million and are comprised of: (a) supplemental building replacement cost value of $3,827,084.47 (as of January 7, 2025); (b) partial extra expense loss of $149,933.18 (as of June 12, 2025); (c) partial business income loss (rental loss value) of $429,893 (as of May 31, 2025); and (d) other direct and consequential damages. These damages continue to accrue and increase.

## COUNT I
## Breach of Contract

82.     Brewers Hill incorporates and reaffirms paragraphs 1-81 above as if fully and completely set forth herein.

83.     For good and valuable consideration, Travelers issued the Policy covering the Apartment Complex for the time period at issue.

84.     The Policy constitutes a valid and enforceable contract between Brewers Hill and Travelers.

85.     The Policy provides coverage for physical loss and damage and business income loss from a covered loss.

86.     Brewers Hill sustained an insured loss under the Policy and during the policy period.

87.     The loss occurred on September 20, 2024.

88.     Brewers Hill provided prompt notice of the Loss.

89.     The loss is covered by the Policy because the insured property suffered physical loss or damage, resulting rental loss, resulting extra expense, and other covered loss and damage.

90.     The loss is not excluded by the terms of the Policy.

91.     Brewers Hill paid all premiums due under the Policy.

92.     All other conditions precedent to coverage have been fulfilled or waived by Travelers.

93.     Travelers reserved its rights and has failed to pay Brewers Hill's claim in full in a timely manner.

94.     Travelers breached the Policy when it improperly failed to pay Brewers Hill's claim in full in a timely manner.

95.    As a direct and proximate result of Travelers' breach, Brewers Hill has been deprived of the benefits of the insurance coverage to which Brewers Hill is entitled and has suffered, and continues to suffer, direct and consequential damages.

WHEREFORE, Brewers Hill demands judgment in its favor and against Travelers in an amount exceeding $75,000 together with interest, attorneys' fees, and costs, and such other relief that this Court deems just and proper.

### COUNT II
### Lack of Good Faith

96.    Brewers Hill incorporates and reaffirms paragraphs 1-95 above as if fully and completely set forth herein.

97.    The Policy was issued to insure the Apartment Complex located in Maryland.

98.    Maryland's bad faith statute, set forth in Md. Code. Ann., Cts. & Jud. Proc. § 3-1701, states that:

> (e)    Notwithstanding any other provision of law, if the trier of fact in an action under this section finds in favor of the insured and finds that the insurer failed to act in good faith, the insured may recover from the insurer:
>
> (1) Actual damages, which actual damages may not exceed the limits of the applicable policy;
>
> (2) Expenses and litigation costs incurred by the insured in an action under this section or under § 27–1001 of the Insurance Article or both, including reasonable attorney's fees; and
>
> (3) Interest on all actual damages, expenses, and litigation costs incurred by the insured, computed:
>
> (i)  At the rate allowed under § 11–107(a) of this article; and
>
> (ii) From the date on which the insured's claim would have been paid if the insurer acted in good faith.

16

99.    The statute defines "good faith" as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." Md. Code. Ann., Cts. & Jud. Proc. § 3-1701(a)(5).

100.    Travelers lacked good faith with respect to Brewers Hill in at least the following ways:

a.  Failing to provide its coverage position as to the Brewers Hill's loss and claim (now outstanding for over a year);

b.  Failing to deal fairly with Brewers Hill and give equal consideration in all matters to Brewers Hill's interests by, *inter alia* and without limitation, failing to timely advise Brewers Hill of its coverage position;

c.  Failing to provide a "reasonable explanation" of its position on the claim or reasons for its delay in issuing a coverage determination despite repeated requests;

d.  Failing to comply with Md. Code Regs. 31.15.07.04(B) by not timely completing its investigation or advising Brewers Hill in writing as to the "actual reason" more time was allegedly needed;

e.  Failing to perform its investigation in a timely manner, including, but not limited to, by not having WJE perform all testing and inspection in June 2025 when all other concerned parties performed testing and inspection, delaying resolution of the claim for months;

f.  Refusing to provide information about its position on the cost to repair the pool, delaying ultimate resolution of the claim;

g.  Providing misleading or incomplete information concerning pertinent facts or policy provisions relating to the claim and coverage at issue;

h.  Compelling Brewers Hill to commence litigation to recover amounts due under the Policy; and

i.  Such other bad faith conduct as will be revealed during the course of discovery in this action.

17

101.    Travelers lacked good faith in its handling and investigation of Brewers Hill's claim which has caused, and continues to cause, Brewers Hill severe and potentially irreversible financial harm.

102.    Brewers Hill is not required to exhaust its administrative remedies because this is an action under a commercial insurance policy that has a limit of liability exceeding $1,000,000. *See* Md. Code. Ann., Cts. & Jud. Proc. § 3-1701(c)(2)(iii).

WHEREFORE, Brewers Hill demands judgment in its favor and against Travelers in an amount exceeding $75,000, including all direct and consequential damages, together with interest, attorneys' fees, litigation expenses and costs, and such other relief that this Court deems just and proper.

## NOTICE OF REQUEST FOR ATTORNEYS' FEES
## PURSUANT TO MD RULE 2-703

In accordance with Md. Code. Ann., Cts. & Jud. Proc. § 3-1701, Brewers Hill shall be entitled to recover reasonable attorneys' fees and costs concerning its bad faith claim asserted under Count II of this Complaint.

## REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial on all issues triable to a jury.

Date: December 4, 2025                     Respectfully submitted,

                                           _____/s/_____
                                           Elchanan ("Elliott") Engel, (AIS# 0612120248)
                                           Berman, Boyle & Engel LLC
                                           1777 Reisterstown Road, Suite 265
                                           Baltimore, Maryland 21208
                                           667-217-5150
                                           ee@bbelaw.com

                                           Jay M. Levin (*pro hac vice* admission pending)
                                           **FLASTER GREENBERG P.C.**
                                           One Tower Bridge
                                           100 Front Street, Suite 100
                                           Conshohocken, PA 19428
                                           Telephone: 215-546-4842
                                           Jay.Levin@flastergreenberg.com

                                           *Attorneys for Plaintiffs*